UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOE LEMONS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:12CV923 ACL |
| | ) |
| TOM VILLMER,[1] | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Joe Lemons for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

### I. Procedural History

Petitioner Lemons is presently incarcerated at the Farmington Correctional Center in Farmington, Missouri, pursuant to the Sentence and Judgment of the Circuit Court of New Madrid County, Missouri. (Respt's Ex. B at 36-37.)

On February 11, 2008, a jury found Lemons guilty of one count of the class B felony of possession of a controlled substance with intent to deliver, and one count of the class A misdemeanor of resisting arrest. *Id.* at 29-30. Lemons was sentenced to fifteen years imprisonment for the possession charge and a concurrent one-year term for the resisting arrest charge. (Respt's Ex. A at 36-37.)

---

[1] Petitioner has been transferred on multiple occasions since the filing of the Petition. He is currently incarcerated at Farmington Correctional Center, where Tom Villmer is the Warden. Tom Villmer will therefore be substituted as the proper respondent. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.

1

Lemons raised two claims on direct appeal. In his first claim, Lemons argued that the trial court erred in convicting and sentencing him for the possession of crack cocaine with intent to deliver charge because there was insufficient evidence to convict him of the offense in that the laboratory analysis of the substance could not identify it as cocaine base but identified it as the legally distinct substance of cocaine. (Respt's Ex. C at 12.) In his second claim, Lemons argued that the trial court plainly erred in submitting Instruction No. 9 to the jury and in convicting him of the crime of resisting arrest; Instruction No. 9 allowed the jury to return a verdict against him for a crime with which he was not charged. *Id.* at 13. On September 8, 2009, the Missouri Court of Appeals for the Southern District affirmed Lemons' convictions. (Respt's Ex. E.)

Lemons filed a timely motion for post-conviction relief under Rule 29.15. (Respt's Ex. G at 4-16.) After the appointment of counsel, Lemons filed an amended post-conviction relief motion and request for an evidentiary hearing. *Id.* at 18-28. In the amended motion, Lemons argued that trial counsel was ineffective for asking voir dire questions of police officers and others on the jury panel whether, in their experience, the police officers they knew ever lied. *Id.* at 19. Lemons also attached and incorporated the following *pro se* claims: (1) he received ineffective assistance of counsel when trial counsel failed to move for dismissal of the charges against him as the trial court was without jurisdiction because the State did not file its information or indictment within ten days after the date it filed the complaint; (2) he received ineffective assistance of counsel when trial counsel failed to impeach Officer James Waynick; and (3) he received ineffective assistance of counsel when trial counsel failed to move to strike the testimony of Officer John Higgins. *Id.* at 10-16. The motion court denied Lemons' claims after holding an evidentiary hearing. *Id.* at 30-36.

In his sole point on appeal from the denial of post-conviction relief, Lemons argued that he received ineffective assistance of counsel because trial counsel had no reasonable strategy for asking police officers and others on the venire panel if, in their experience, police officers ever lie. (Respt's Ex. H.) The Missouri Court of Appeals affirmed the decision of the motion court. (Respt's Ex. J.)

Lemons timely filed the instant Petition on May 18, 2012. (Doc. 1.) Lemons raises four grounds for relief, including: (1) the evidence was insufficient to support his conviction for possession of a controlled substance with intent to deliver because the State failed to prove that the drugs he possessed were crack cocaine as opposed to cocaine; (2) the trial court erred in submitting Instruction No. 9 to the jury and in convicting him of the crime of resisting arrest because the instruction allowed the jury to return a verdict against him for a crime with which he was not charged; (3) Lemons presents all of the claims that he raised in his motion for new trial; and (4) he received ineffective assistance of counsel when trial counsel asked the venire panel if, in their experience, police officers ever lie.

On July 12, 2012, Respondent filed a Response to Order to Show Cause, in which he argues that ground two is not cognizable; parts of ground three are procedurally defaulted; and Lemons' claims fail on their merits. (Doc. 12.)

## II. Facts[2]

Viewing the evidence in the light most favorable to the verdict, the record reveals that in the late evening of June 19, 2007, Sergeant Joe Stewart of the Kennett Police Department was on patrol when he drove past Lemons who was standing near Mason's Bar on Baldwin Street in Kennett, Missouri. There was testimony at trial that this was a known area for crack cocaine

---

[2]The Court's summary of the facts is taken from the decision of the Missouri Court of Appeals on direct appeal. (Respt's Ex. E at 2-5.)

transactions. Sergeant Stewart believed there was a municipal court warrant out for Lemons' arrest and he checked with dispatch to confirm that Lemons did, in fact, have an outstanding warrant. Sergeant Stewart then requested back up assistance from another officer rand turned his vehicle around to go back to the location where he had first encountered Lemons. As Sergeant Stewart approached Lemons in his vehicle he noticed there were two other males standing there with him. When the trio spotted Sergeant Stewart's vehicle approaching their location, the two other individuals walked away in somewhat of a hurried manner toward the north side of Mason's Bar. Sergeant Stewart illuminated the men with his spotlight and the two men started to flee. At that point, Sergeant Stewart exited his patrol car and yelled at them to stop.

Around this time, Officer Bernie Rogers arrived on the scene to assist Sergeant Stewart. He exited his vehicle and approached Lemons at which time he advised Lemons to stop because there was a warrant out for his arrest. Lemons started walking away from Officer Rogers and then he took off running. Officer Rogers pursued Lemons on foot until Lemons jumped a fence and Officer Rogers was unable to follow him.

Approximately an hour later, in the early morning hours of June 20, 2007, Office Rogers was patrolling the area in his patrol vehicle accompanied by Corporal Aaron Waynick. They again encountered Lemons standing outside Mason's Bar. Officer Rogers pulled up to Lemons and Lemons immediately tried to get around the patrol car. Corporal Waynick got out of the car, yelled at Lemons to stop, and told him he was under arrest. A pursuit ensued in which Corporal Waynick chased Lemons on foot through a residential area and Officer Rogers pursued him in his patrol vehicle. They eventually cornered Lemons in some bushes in the yard of a home. The officers informed Lemons he was under arrest and instructed him to put his hands

4

behind his back. Lemons failed to do so and, instead lay on the ground and placed his hand underneath him. He told the officers he "didn't do anything" (Respt's Ex. A at 105) and demanded to know why they were "messing with him," *id.* at 127. Corporal Waynick warned Lemons that if he did not put his hands behind his back as requested, they would have to mace him. When he still refused to cooperate, Corporal Waynick maced him and the officers cuffed his hands behind his back.

Lemons was arrested and, before placing him in the patrol car, Officer Rogers searched Lemons at which time he found a prescription pill bottle in Lemons' front left pocket. Inside the bottle were two small, white, rock-like substances. After Lemons was transported to the police station, Officer Rogers conducted a field test on the two rock-like substances found in the prescription bottle and the substances tested positive for the presence of cocaine base, which is also referred to as crack cocaine.

A trial was held on February 11, 2008. At trial, John Higgins, a supervising agent for the Bootheel Drug Task Force, testified that the drug of choice in the area where Lemons was arrested is definitely crack cocaine and it is routine for people in that area to sell small amounts of it at a time. He related that the average size of crack cocaine sold was 0.1 to 0.15 grams and the two rocks found on Lemons were consistent with that size. He also testified that it is common for crack cocaine to be sold in rock form such as the ones found on Lemons as opposed to being individually packaged.

Amy Nix, a forensic chemist with the Missouri State Highway Patrol, testified that she tested two rocks which were in the form of crack cocaine. However, her testing was unable to conclusively determine whether the rocks were "cocaine" or "cocaine base." *Id.* at 147. She

therefore "had to report it as cocaine." *Id.* Nevertheless, she also related that both "cocaine base" and "cocaine" were controlled substances. *Id.*

### III. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. §2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. §2254(e)(1). *See also Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). With regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see also Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006); *Rousan v. Roper*, 436 F.3d 951, 956

(8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams*, 529 U.S. at 411.

## IV. Petitioner's Claims

The undersigned will discuss Lemons' four grounds for relief in turn.

**1.     Ground One**

In his first ground for relief, Lemons argues that there was insufficient evidence supporting his conviction for possession of a controlled substance with intent to deliver. Lemons contends that the State failed to prove that the drugs he possessed were crack cocaine as opposed to regular cocaine.

The Amended Information charged that Lemons:

> In violation of Section 195.11, RSMO, committed the class B felony of possession of a controlled substance with intent to deliver....in that on or about June 19th, 2007, in the County of Dunklin, State of Missouri, [Lemons], with the intent to deliver, possessed crack cocaine, a controlled substance, knowing of its presence and nature…

(Respt's Ex. B at 15.)

At trial, Officer Rogers testified that he field tested the white rocks that he recovered from Lemons as soon as he returned to the police station after arresting Lemons. (Respt's Ex. A at 107.) Officer Rogers described the field testing procedure as follows:

> At the police department, we have a large gray container which is set up to test different kinds of narcotics. And what I did was I took a small amount off of one of the rocks, and, I placed it in a tray, it's a part substance, part A and a part B, and, you put the part A in there and I mix it up, when you put a part B in there, it will turn a bluish color, which is a positive response for cocaine base.

*Id.* Officer Rogers testified that, in this case, the substance turned blue. *Id.* at 108.

7

Amy Nix, a forensic chemist with the Missouri State Highway Patrol, testified that her testing of the two rocks did not conclusively determine whether the rocks were "cocaine" or "cocaine base." *Id.* at 147. Ms. Nix testified that she therefore "had to report it as cocaine." *Id.* She stated that cocaine is a controlled substance, and that the cocaine tested was in the form commonly referred to as "crack cocaine." *Id.*

Due Process and the Sixth Amendment "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 510 (1995); *Johns v. Bowersox*, 203 F.3d 538, 543 (8th Cir. 2000) (quoting *Gaudin*, 515 U.S. at 510). Therefore, a petitioner is entitled to habeas corpus relief under § 2254 "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Nance v. Norris*, 392 F.3d 284, 289-90 (8th Cir. 2004). The relevant question in analyzing such a claim is

> whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319 (citation omitted); *Skillicorn v. Luebbers*, 475 F.3d 965, 977 (8th Cir. 2007) (quoting *Jackson*, 443 U.S. at 319), *cert. denied*, 128 S.Ct. 297 (2007).

The scope of habeas review of such a claim is "extremely limited." *Skillicorn*, 475 F.3d at 977. The court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and . . . must defer to that resolution." *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003) (quotation marks omitted) (quoting *Sexton v. Kemna*, 278 F.3d

808, 814 (8th Cir. 2002)). Additionally, the federal habeas court may not make its own determination of witness credibility, for that determination is for the state court trier of fact. *Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000). Eyewitness testimony to the crime charged may be sufficient to satisfy due process, due to the assumption the jury believes the witness's story. *See Tibbs v. Florida*, 457 U.S. 31, 45 n. 21 (1982) (noting that, "[i]f the jury believed the [eyewitness's testimony], the State's presentation was more than sufficient to satisfy due process"); *Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000) ("A victim's testimony is, by itself, normally sufficient to sustain a conviction").

The Missouri Court of Appeals rejected Lemons' claim. (Respt's Ex. E at 5-9.) The Court stated, in relevant part:

> [Lemons] was charged under section 195.211.1, which sets out that "it is unlawful for any person…to possess with intent to distribute, deliver, manufacture, or produce a controlled substance." Section 195.017.4(d), RSMo Cum. Supp. 2006, classifies and defines the various types of controlled substances and criminalizes possessing the following cocaine related substances: "[c]oca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine…"
> Accordingly, in the instant matter, whether the substance was cocaine or crack cocaine it is clear that it was a controlled substance the possession of which is prohibited by section 195.211.1. *See State v. Campbell*, 122 S.W.3d 736, 739 n. 4 (Mo.App. 2004); *State v. James*, 796 S.W.2d 398, 399-400 (Mo.App. 1990). The aforementioned facts were sufficient for a reasonable juror to reach the conclusion beyond a reasonable doubt that [Lemons] was guilty of possessing a "controlled substance" "with the intent to distribute" which is an act prohibited by section 195.211. Point I is denied.

*Id.* at 8-9.

The decision of the Missouri Court of Appeals was not contrary to or an unreasonable application of clearly applicable federal law. The evidence presented at trial revealed that the rock-like substance Lemons possessed was either cocaine or crack cocaine. Because the statute

9

under which Lemons was charged classifies both cocaine and crack cocaine as controlled substances for which possession is prohibited, the jury could have convicted Lemons regardless of whether the substance was cocaine or crack cocaine. Further, the field test conducted by Officer Rogers demonstrated that the drugs were crack cocaine. Thus, there was sufficient evidence for a reasonable juror to convict Lemons of possession of crack cocaine with intent to distribute.

Accordingly, Lemons' first ground for relief will be denied.

**2.      Ground Two**

In his second ground for relief, Lemons argues that the trial court erred in submitting Instruction No. 9 to the jury and in convicting him of the crime of resisting arrest because the instruction allowed the jury to return a verdict against him for a crime with which he was not charged. Respondent contends that Lemons' second ground for relief is not cognizable in this habeas action because Lemons is not in custody on the resisting arrest conviction.

"A district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The custody requirement is fulfilled when a petitioner is in custody "under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989).

Here, Lemons was sentenced to one year in the county jail on the resisting arrest conviction on March 25, 2008. (Respt's Ex. B at 36.) That sentence expired no later than March 25, 2009. Thus, Lemons is not in custody for the resisting arrest conviction, and Lemons' claim challenging this count is not cognizable in this action.

**3.     Ground Three**

In his third ground for relief, Lemons presents all of the claims he raised in his motion for new trial. In his first two claims, Lemons argues that the evidence presented by the State was insufficient to support his conviction of possession of a controlled substance with the intent to distribute. The Court has already found that the State presented sufficient evidence to support his conviction for possession of a controlled substance with intent to distribute. Thus, these claims fail.

Lemons next raises the following claims: (i) the trial court erred in denying his *Batson* challenge to the State's peremptory strike of Juror Carrie Miller; (ii) the trial court erred in admitting the testimony of Agent John Higgins regarding what he believed to be a distribution amount; and (iii) the trial court erred in sustaining the State's objection to Officer Bernie Rogers' testimony regarding whether the amount of drugs found on Lemons constituted distribution.

Respondent contends that Lemons' claims are procedurally defaulted and meritless.

**Procedural Default**

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020–21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) and *Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997)). Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A claim has been fairly presented when a petitioner

has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Wemark*, 322 F.3d at 1021 (internal quotation marks omitted) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)). Claims that are not fairly presented to the state courts are procedurally defaulted. *See id*. at 1022.

Missouri requires the raising of constitutional claims at the first available opportunity. *See In re J.M.N.*, 134 S.W.3d 58, 73 (Mo. Ct. App. 2004); *In re T.E.*, 35 S.W.3d 497, 504 (Mo. Ct. App. 2001). Alleged trial errors, including constitutional claims of trial error, must be raised on direct appeal; for "[p]ost-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review." *State v. Clark*, 859 S.W.2d 782, 789 (Mo. Ct. App. 1993).

In this case, Lemons procedurally defaulted his claims by not raising them in his direct appeal.

Claims that have not been fairly presented to the state courts are procedurally defaulted and may not give rise to federal habeas relief unless the petitioner establishes "cause for not presenting the claim on post-conviction appeal and prejudice from the failure, or a fundamental miscarriage of justice-meaning that he is actually innocent." *Storey v. Roper*, 603 F.3d 507, 523-24 (8th Cir. 2010) (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Lemons has not made an allegation of cause and prejudice to excuse the default. Lemons has also failed to make a showing of actual innocence. Thus, Lemons' claims are procedurally defaulted.

**Merits Analysis**

The undersigned has already found that Lemons' claims are procedurally defaulted. Lemons' claims fail on their merits as well.

### i. *Batson* Challenge

Lemons argues that the trial court erred in denying his *Batson* challenge to the State's peremptory strike of Juror Carrie Miller.

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court set forth a three-step analysis for peremptory challenges under the Equal Protection Clause of the Fourteenth Amendment. "First, the opponent of the peremptory challenge must establish a prima facie showing that the challenge is discriminatory." *United States v. Wolk*, 337 F.3d 997, 1007 (8th Cir. 2003). Second, "[t]he proponent of the peremptory challenge must then articulate a race-neutral explanation for the challenge." *Id.* Third, "[i]f a race-neutral explanation is offered, the challenger must show that the explanation is a pretext for discrimination." *Id.*

In this case, Lemons objected to the State's strike of Ms. Miller, an African-American woman. (Respt's Ex. A at 71.) The prosecutor responded that he struck Ms. Miller because "during the voir dire Ms. Miller appeared to be asleep." *Id.* He indicated that Ms. Miller "did not answer any questions, and, had her eyes closed, and I noticed there was some slight nodding going on there." *Id.* The trial court concurred in the observations made by the State. The court noted that Ms. Miller was an "elderly lady," seemed to be nodding off, and showed little to no interest in the questioning that was propounded to her. *Id.* The court overruled Lemons' *Batson* challenge. *Id.*

The State's articulated reason for striking Ms. Miller--the fact that she was sleeping during voir dire--is a race neutral explanation and was corroborated by the trial judge. Lemons offered no evidence that the state's reason for striking Ms. Miller was pretextual. Thus, this claim will be denied.

13

### ii.     Testimony of Agent Higgins

Lemons argues that the trial court erred in admitting, over his objection, the testimony of Agent John Higgins regarding what he believed to be a distribution amount.

Generally, questions concerning the admissibility of evidence are matters of state law, and the issue on habeas review is not whether the evidence was properly admitted under state law. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991). However, evidentiary issues can form the basis for federal habeas relief if the error constitutes an independent constitutional violation. *See Bounds v. Delo*, 151 F.3d 1116, 1119 (8th Cir. 1998). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they are so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Id.* (quoting *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996)). To meet this standard, a petitioner must show a reasonable probability that the evidentiary errors affected the trial's outcome. *See Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir. 1996).

Lemons objects to the following testimony of Agent Higgins:

[Prosecutor]:   And, let me show you what's previously been admitted as State's Exhibit 5, and ask you to take a look at that; do those appear to be a, sized for sale?

[Agent Higgins]:   Yes, sir, they do.

[Prosecutor]:   Now, is it common for those to not be packaged individually, that's wrapped separately, even if they're going to be sold?

[Agent Higgins]:   Yeah, it's common, yes, sir.

[Prosecutor]:   Would you say it's more common that they not be wrapped up separately, or that somebody would package each one separately?

> [Defense Counsel]:   Judge, I'm going to have to object, that's pure speculation.
>
> THE COURT:   Overruled, I believe this gentleman['s] experience[] with the Drug Task Force would allow him to testify.

[Agent Higgins]:   Really, it just depends, I mean, I've seen it both ways, you know.

[Prosecutor]: But it is routine for them to not be wrapped separately?

[Agent Higgins]: Yes, sir.

(Respt's Ex. A at 140-41.)

The admission of Agent Higgins' testimony was not constitutional error. Agent Higgins was a member of the Bootheel Drug Task Force. As such, he was qualified to testify regarding how illegal drugs are typically packaged. Expert testimony is admissible to assist the trier of fact to understand specialized knowledge. Fed.R.Evid. 702(a). Thus, Lemons' claim will be denied.

### iii. Testimony of Officer Rogers

Lemons next argues that the trial court erred in sustaining the State's objection to Officer Bernie Rogers' testimony regarding whether the amount of drugs found on Lemons constituted distribution.

Officer Rogers testified as follows:

[Defense Counsel]: Okay, what you found on him, was this a distribution amount, which would allege distribution?

> [Prosecutor]: Your Honor, again, that's clearly a matter for the jury, and I'm going to object as that calling for a legal conclusion.
>
> THE COURT: Then the objection is sustained.

[Defense Counsel]: I'll withdraw, Your Honor, thank you.

Was it pre-packaged in any way, separate package, separate baggie?

[Officer Rogers]: It was in a prescription bottle.

[Defense Counsel]: But you said there's two rocks?

[Officer Rogers]: That is correct.

[Defense Counsel]: Had the two rocks separately packaged?

15

>    [Officer Rogers]: No.
>
>    [Defense Counsel]: Did you find any cash on Joe?
>
>    [Officer Rogers]: No, I did not.

(Respt's Ex. A at 112-13.)

The court properly sustained the State's objection. Defense counsel asked Officer Rogers if the amount of drugs Lemons possessed "would allege distribution." (Respt's Ex. A at 112.) As such, defense counsel asked Officer Rogers to provide his opinion regarding whether Lemons committed the charged crime. Such testimony would have been improper. Further, after the State's objection was sustained, defense counsel elicited testimony from Officer Rogers suggesting that Lemons was not selling drugs. Thus, Lemons was not prejudiced by the court's sustaining of the State's objection. Lemons' claim will be denied.

**4.      Ground Four**

In his fourth ground for relief, Lemons argues that he received ineffective assistance of counsel when trial counsel asked the venire panel if, in their experience, police officers ever lie.

During voir dire, defense counsel asked venireman Robert Burnett, a deputy sheriff of New Madrid County, if he believes his fellow officers lie. (Respt's Ex. A at 57.) Venireman Burnett testified that it was possible, but he had never observed a fellow officer lying. *Id.* at 57-58. Defense counsel next asked Venireman Danny Brandon, who testified that he has a first cousin on the Kennett police department, whether his cousin was the "type of officer that would lie." *Id.* at 58. Venireman Brandon responded "[a]bsolutely not." *Id.* With regard to other officers, Venireman Brandon stated "sure, it's always possible, but…I've always been involved with police officer[s] that take their job seriously." *Id.* at 59. Defense counsel posed the same question to four other venirepersons who testified that they were related to police

16

officers. *Id.* at 59-61. Each time, the venireperson testified that he or she did not believe the family member officer would lie. *Id.*

Lemons raised this claim in his post-conviction motion and in his appeal from the denial of post-conviction relief.

At the evidentiary hearing on Lemons' post-conviction motion, defense counsel testified that his strategy at trial was to show that the Kennett officers had lied. (Respt's Ex. F at 5.) Defense counsel stated that, as a result of his questioning of the venire panel about whether police officers lie, he was able to strike some members of the venire panel for cause. *Id.* at 6, 8. Defense counsel testified that he was also attempting to plant in the venire panel's mind the idea that police officers might lie. *Id.* at 6.

The Missouri Court of Appeals held as follows:

> Following an evidentiary hearing, the motion court found as follows on this claim:
>> The State's case as to the commission of the offenses was based on the testimony of police officers and depended on their veracity. Defense counsel would not have wanted a person on the jury who believed that police officers never lie. Counsel's questions were posed to discover if any prospective juror had such a belief, so that he could challenge them for cause, or strike them peremptorily, to prevent them from serving on the jury. The questions were reasonable trial strategy, and they do not establish ineffective assistance of counsel.
>
> In his sole point on appeal, [Lemons] claims this finding is clearly erroneous because this trial strategy was unreasonable. [Lemons]'s only argument directed toward this finding is that "[c]ounsel could have easily furthered his goal of removing these particular jurors with close connection to law enforcement without posing unnecessary questions that had such a high likelihood of tainting the panel."
> Initially, we note that [Lemons]'s characterization of trial counsel's voir dire questions and the answers elicited to those questions as having a "high likelihood of tainting the panel" is based upon nothing but speculation and conjecture. [Lemons] points us to no evidence in the record supporting that conclusion. Similarly, [Lemons] fails to point us to any evidence in the record supporting his conclusion that these questions were "unnecessary."
> Nevertheless, even if we assume other strategies could have been employed to accomplish trial counsel's goal of identifying and eliminating those panel members with preconceived notions of police officer veracity, it would not support the conclusion that

17

> the direct strategy employed by trial counsel was unreasonable. "Although another attorney may well have employed a different strategy, tactical and strategic decisions—which might have been handled differently by many or even most attorneys-will not establish ineffectiveness." *Barnett v. State*, 103 S.W.3d 765, 771 (Mo. banc 2003).
>
> [Lemons]'s point is denied, and the motion court's judgment denying [Lemons]'s amended motion for post-conviction relief is affirmed.

(Respt's Ex. J at 3-4.)

In order to state a claim of ineffective assistance of trial counsel, a petitioner must meet the *Strickland* standard: Lemons must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable - a substantially higher threshold." *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009) (internal quotations and citations omitted).

The determination of the Missouri Court of Appeals was reasonable. Defense counsel's questioning of the venire panel to determine their beliefs regarding whether police officers lie was reasonable trial strategy. The majority of the State's witnesses were police officers. As such, the credibility of police officers was a significant issue in Lemons' trial. Defense counsel's questioning of the venire panel regarding whether they believed police officers always told the truth enabled defense counsel to determine whether any prospective jurors were biased and should be stricken for cause. In addition, defense counsel's line of questioning suggested to the

venire panel the possibility that police officers might not always be truthful. Thus, Lemons has failed to demonstrate that trial counsel acted unreasonably.

Accordingly, Lemons' fourth ground for relief will be denied.

## V. Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Lemons has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

s/Abbie Crites-Leoni  
ABBIE CRITES-LEONI  
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of July, 2015.